*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0288P (6th Cir.)
File Name: 01a0288p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DENISE C. KLEMENCIC,
     *Plaintiff-Appellant,*

     *v.*

OHIO STATE UNIVERSITY,
     *Defendant-Appellee,*

THOMAS ED CRAWFORD;
JAMES L. JONES,
     *Defendants.*

No. 98-3951

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 94-00181—Algenon L. Marbley, District Judge.

Argued: June 6, 2001

Decided and Filed: August 27, 2001

Before: KEITH, SILER, and CLAY, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Seymour R. Brown, Cleveland, Ohio, for Appellant. Elizabeth M. Stanton, CHESTER, WILLCOX & SAXBE, Columbus, Ohio, for Appellee. **ON BRIEF:**

1

Seymour R. Brown, Cleveland, Ohio, David G. Phillips, Cleveland, Ohio, for Appellant.  Elizabeth M. Stanton, CHESTER, WILLCOX & SAXBE, Columbus, Ohio, Wanda L. Carter, MOOTS, COPE & CARTER, Columbus, Ohio, for Appellee.

SILER, J., delivered the opinion of the court, in which KEITH, J., joined. CLAY, J. (pp. 11-13), delivered a separate opinion concurring in the result.

————————————

**OPINION**

————————————

SILER, Circuit Judge.  Pursuant to 42 U.S.C. § 1983 and Title IX, plaintiff Denise Klemencic filed suit against defendants Ohio State University ("Ohio State"), Coach Thomas "Ed" Crawford, and Athletic Director James Jones, alleging that she was subjected to *quid pro quo* sexual harassment and a sexually hostile work environment by her track coach, Crawford.  Final judgments in favor of Crawford held that he did not subject Klemencic to *quid pro quo* sexual harassment or a sexually hostile work environment. Additionally, the district court granted summary judgment for Ohio State on Klemencic's Title IX claim against it. Klemencic's only contention on appeal is that the district court erred by granting summary judgment for Ohio State on her Title IX claim.  We affirm.

### I.  Background

Klemencic was a member of Ohio State's women's track and cross country teams during the 1990-91 and 1991-92 seasons.  As a member of the cross country team, she was coached by Crawford, who was employed by Ohio State as an assistant women's cross country coach from 1990 until 1993. Klemencic's NCAA athletic eligibility expired at the conclusion of the 1991-92 season.

Wanting to train for the Olympics post-eligibility, Klemencic alleges that she entered into an unwritten agreement with Crawford whereby she would continue to train with Ohio State's cross country team. Pursuant to that agreement, she would be permitted to train with the women's cross country team during the 1992-93 season in exchange for her serving as the team's volunteer assistant coach. If Ohio State did not agree to those arrangements, Crawford agreed to continue as her coach on his own time.

During the summer of 1992, after her eligibility had expired, Crawford attempted to establish a romantic relationship with Klemencic. She alleges that his romantic overtures, her rejection of those overtures, and her desire to train with the team during 1992-93 led to *quid pro quo* sexual harassment. In September 1992, after she refused to date Crawford, Klemencic telephoned him to ask about the training schedule for the cross country team. He allegedly told her that she could not train with the team because of her "bad attitude," because she treated him badly and overreacted to his romantic overtures, and because she did not sufficiently train, as was required, over the summer. Klemencic admits that Crawford offered her the opportunity to take a time trial and that, if she passed the time trial, he would allow her to train with the team. She refused a time trial. Klemencic believes that Crawford precluded her from training with the team because she refused to date him.

Klemencic later complained to Ohio State officials that because she would not date Crawford, he was not permitting her to train with the cross country team during the 1992-93 season. Ohio State's athletic director, Jones, met with Crawford and began an investigation. In the course of his investigation, he met with and admonished Crawford, and he placed a letter of reprimand in Crawford's personnel file. He did not, however, order that Klemencic be permitted to train with the track team. He did not believe that she was the caliber of athlete who should be allowed to train with an Ohio State team post-eligibility. He believed that Crawford's job was to train eligible, not ineligible athletes. From the time

that Klemencic first made contact with Jones, she had no further contact with Crawford.

In addition to undertaking an investigation, Jones provided Klemencic with contact information for various individuals who could assist her. He offered her the opportunity to meet with an Ohio State athletic sports psychologist, an offer that she accepted. Additionally, he provided her with contact information for the athletic department's faculty representative and, upon learning that Klemencic was considering filing sexual harassment charges against Crawford, referred her to Ohio State's Ombudservices Department. After conversations with these individuals, and further conversations with Jones, Klemencic decided to file a sexual harassment complaint against Crawford.

In January 1993, Klemencic filed a formal sexual harassment complaint with Ohio State's Office of Dispute Resolution ("Office"). The Office, in the person of Gail Carr-Williams, conducted an investigation and concluded that Crawford's behavior toward Klemencic violated Ohio State's sexual harassment policy. Based on that conclusion, Carr-Williams recommended that the athletic department keep Jones's reprimand letter in Crawford's personnel file for one year, that a copy of that reprimand letter be permanently kept in a file in Human Resources, and that Crawford participate in counseling and a training session on sexual harassment. Those recommendations were implemented. Additionally, she recommended that Klemencic be allowed to train with the team. While the parties dispute whether Carr-Williams ever offered Klemencic an opportunity to train with the team, it is undisputed that Klemencic did not train with the team.

In 1994, Klemencic filed this suit in the district court. In an amended complaint, she alleged that "Ohio State" was liable for Crawford's "*quid pro quo* sexual harassment" and "for his excluding her from the benefits of the athletic programs at" Ohio State "to which she was entitled." She charged that Ohio State, along with Jones and Crawford in their official capacities, denied her the benefits of and subjected her to

2000) (unpublished order), does not preclude dismissal based upon the law of the case at this time where, upon further briefing and analysis, it is now clear that Plaintiff's claim is barred by this doctrine.

*Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1127-28 (10th Cir. 1998) (citation omitted); *see also Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 258 (6th Cir. 2000) (articulating the same elements of Title IX claim post-*Gebser* for student-on-student sexual harassment).

In the matter at hand, Plaintiff's allegations of sexual harassment were based upon Crawford's conduct.  Plaintiff did not appeal the district court's order granting Crawford summary judgment on Plaintiff's allegation of sexually hostile environment, nor did she appeal the jury verdict in Crawford's favor on Plaintiff's allegation of *quid pro quo* sexual harassment.  Accordingly, under the law of the case doctrine, Plaintiff cannot satisfy the first essential element of her Title IX claim, and her case is thus barred from appellate review. *See Field,* 157 F.3d at 40 ("The law of the case . . . prevents a litigant from resurrecting an issue that has already been decided by a lower court and that has gone unchallenged on appeal.")  In other words, in order for this Court to reverse the district court's grant of summary judgment to the University and remand the case, the Court must determine that a genuine issue of material fact remains for trial that Plaintiff was sexually harassed by Crawford.  However, the issue of whether Plaintiff suffered sexual harassment at the hand of Crawford under either a *quid pro quo* or sexually hostile environment theory has been decided in Crawford's favor, and has gone unchallenged by Plaintiff on appeal.  Therefore, Plaintiff's Title IX claim against the University brought on the basis of Crawford's alleged sexual harassment is barred under the law of the case. *See id.*; *see also Moored*, 38 F.3d at 1421.

The order rendered by a previous panel of this Court, that Plaintiff's claim on appeal was not moot because "[t]he question of whether the plaintiff could still prevail on a Title IX claim against OSU in light of the final judgment in favor of Crawford on the § 1983 sexual harassment claims is intertwined with the merits of the appeal and should not be decided by motion prior to complete briefing[,]" *see Klemencic v. Ohio State Univ.*, No. 98-3951 (6th Cir. Aug. 4,

discrimination under the educational programs of Ohio State on the basis of her sex in violation of Title IX of the Civil Rights Act of 1972, 20 U.S.C. §§ 1681-1688. Additionally, she charged that Jones and Crawford were liable in their individual capacities under 42 U.S.C. § 1983. Klemencic also alleged violations of state law, including intentional infliction of emotional distress and sexual harassment.  She sought compensatory and punitive damages.

In 1996, the district court a) denied Klemencic's and Ohio State's summary judgment motions; b) granted Jones's and Crawford's motions to dismiss the Title IX claims against them; c) granted Jones's motion to dismiss the § 1983 claim against him; d) denied Crawford qualified immunity under § 1983, which we affirmed in *Klemencic v. Ohio State Univ.*, 111 F.3d 131 (1997) (per curiam); and e) dismissed without prejudice Klemencic's state law claims for lack of jurisdiction.  Klemencic's Title IX claim against Ohio State and her § 1983 claim against Crawford remained.  Jones was dismissed entirely from the case.

For the first time, in 1998,   Klemencic began to characterize her complaint as having raised sexually hostile environment claims as well as *quid pro quo* sexual harassment claims.  Crawford filed a motion for partial summary judgment as to this newly identified hostile environment claim. He also sought summary judgment on the § 1983 claim arising from his alleged *quid pro quo* sexual harassment of Klemencic.  Additionally, as case law interpreting Title IX had developed substantially since the court's 1996 order, Ohio State filed a second motion for summary judgment on all liability issues.  While these motions were pending, the Supreme Court issued its decision in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998), which clarified the standard of proof that a plaintiff alleging sexual harassment by a school employee would have to meet before the school could be liable under Title IX.

In July 1998, the district court granted Crawford's motion for summary judgment on the § 1983 hostile environment

claim.  It also dismissed Klemencic's "belatedly identified claims of hostile educational environment under Title IX against Ohio State. . . because Plaintiff fails to allege conduct sufficient to establish such a claim."  Next, the court applied *Gebser* and granted summary judgment to Ohio State on Klemencic's Title IX *quid pro quo* sexual harassment claim. And, third, the court denied Crawford's motion for summary judgment on the § 1983 *quid pro quo* claim.  Later that same month, a jury returned a verdict in favor of Crawford on Klemencic's § 1983 *quid pro quo* sexual harassment claim.

In August 1998, Klemencic filed a notice of appeal.  In her notice, Klemencic appealed only the July 1998 order that granted summary judgment for Ohio State on her Title IX claim.   She did not appeal the jury verdict in favor of Crawford on the *quid pro quo* sexual harassment claim or the district court's grant of summary judgment to Crawford on the hostile environment claim.  In response to Klemencic's notice of appeal, Ohio State filed a motion to dismiss Klemencic's appeal on the ground that the final judgments in favor of Crawford on Klemencic's *quid pro quo* sexual harassment and hostile environment claims rendered the question of Ohio State's liability under Title IX moot.  A motions panel of this court held that Klemencic's appeal was indeed limited to the specific issue that she designated in her notice of appeal – the summary judgment in favor of OSU on the Title IX claim –   but refused to dismiss her appeal as moot.  *See Klemencic v. Ohio State*, No. 98-3951 (6th Cir. Aug. 4, 2000) (order).  Thus, the single issue before us is whether the district court erred by granting summary judgment for Ohio State on Klemencic's Title IX claim.

## II.  Standard of Review

We review a grant of summary judgment de novo and apply the same test as the district court.  *See Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999).  Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  "Summary judgment is

_____

## CONCURRENCE

_____

CLAY, Circuit Judge, concurring.  Although I concur in the result reached by the majority, I write separately because I would affirm the district court's grant of summary judgment to Ohio State University based upon the law of the case doctrine.

"The law of the case . . . prevents a litigant from resurrecting an issue that has already been decided by a lower court and that has gone unchallenged on appeal."  *Field v. Mans,* 157 F.3d 35, 40 (1st Cir. 1998).  Which is to say, "[u]nder the doctrine of the law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation."  *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (citing *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993)).  "A complementary theory, the mandate rule, requires lower courts to adhere to the commands of a superior court." *Moored*, 38 F.3d at 1421 (citing *Bell*, 988 F.2d at 251).

The elements of a Title IX claim based upon sexual harassment following the Supreme Court's decision in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998) have been set forth as follows:

Under the holding in *Gebser*, plaintiffs may proceed on a claim under Title IX if they have sufficiently alleged that:  (1) they were subjected to *quid pro quo* sexual harassment  or  subjected  to  a  sexually  hostile environment; (2) they brought the situation to the attention of an official at the educational institution receiving Title IX funds who had the "authority to take corrective action" to remedy the harassment; and (3) that the institution's response to the harassment amounted to "deliberate indifference."

Section 1983 actions against institutions are not sustainable where an employee did not commit an underlying violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that where the police officer alleged to have committed constitutional violations committed no such violations, the city and police commission could not be held liable under § 1983).  Final judgments -- summary judgments and jury verdicts -- in favor of government officials in § 1983 cases preclude government liability under § 1983.  *See, e.g., Smith v. Thornburg*, 136 F.3d 1070, 1078 n.12 (6th Cir. 1998) (holding that because the court concluded that summary judgment should be granted for police officers, it need not address the liability of the City of Knoxville).  Similarly, we now hold that Title IX actions against institutions are not sustainable where final judgments  have held that the institution's employee did not commit the underlying sex discrimination alleged.

Ohio State cannot be liable under Title IX because, as a matter of law, Klemencic was not subjected to the underlying sex discrimination alleged.  A jury found Crawford innocent of *quid pro quo* sexual harassment, and the district court granted summary judgment for Crawford on any alleged hostile environment claim.  Klemencic's failure to appeal both the jury verdict and summary judgment for Crawford means that those judgments are now final.  For purposes of her Title IX claim against Ohio State, Klemencic is precluded from establishing the first element of her prima facie case -- that she experienced either *quid pro quo* sexual harassment or a sexually hostile environment at the hands of Crawford.  Therefore, her Title IX claim against Ohio State is not sustainable.

**AFFIRMED.**

appropriate if a party, after adequate opportunity for discovery, 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III.  Discussion

### a)  Jurisdiction

As an initial matter, Ohio State again requests that we dismiss Klemencic's appeal as moot.  But, as the motions panel that rejected Ohio State's earlier motion stated: "[T]he question of whether [Klemencic] could still prevail on a Title IX claim against [Ohio State] in light of the final judgment in favor of Crawford on the § 1983 claims is intertwined with the merits of the appeal. . . ."  *Klemencic v. Ohio State*, No. 98-3951 (6th Cir. Aug. 4, 2000) (order).  Therefore, we will evaluate the merits of Klemencic's Title IX claim against Ohio State.

### b)  Title IX

When Congress enacted Title IX in 1972, it had two principal objectives in mind:  "[T]o avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Cannon v. University of Chicago*, 441 U.S. 677, 704 (1979).  Title IX provides, in relevant part:  "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681.  Title IX  is enforceable through a judicially implied private right of action, through which monetary damages are available.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280, 284 (1998).  "[O]nly recipients of federal funds may be liable for damages under Title IX." *See Soper*, 195 F.3d at 854 (citing *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-41 (1999)).  In *Franklin v. Gwinnett*

*County Pub. Schs.*, 503 U.S. 60, 74-75 (1992), the Supreme Court established that a school district can be held liable under Title IX where its employee sexually harasses a student and, in *Gebser*, 524 U.S. at 281, the Court defined the "contours of that liability."

In *Gebser*, 524 U.S. at 287-88, the Supreme Court rejected vicarious liability and constructive notice as bases for Title IX liability. For a plaintiff to proceed on a claim against an educational institution under Title IX, a plaintiff must establish a prima facie case showing that: 1) she was subjected to *quid pro quo* sexual harassment or a sexually hostile environment; b) she provided actual notice of the situation to an "appropriate person," who was, at a minimum, an official of the educational entity with authority to take corrective action and to end discrimination; and c) the institution's response to the harassment amounted to "deliberate indifference." *See Morse v. Regents of the Univ. of Colorado*, 154 F.3d 1124, 1127-28 (10th Cir. 1998) (citing *Gebser*, 524 U.S. at 289-91).

### c) Analysis

The district court applied *Gebser* and granted summary judgment for Ohio State on the ground that, pursuant to Title IX, Klemencic failed to "present evidence sufficient to establish that [Ohio State] could be liable under a deliberate indifference standard." But when the district court granted summary judgment, a jury had not yet returned a verdict in favor of Crawford on Klemencic's § 1983 claim of *quid pro quo* sexual harassment and the court had not yet granted summary judgment for Crawford on any § 1983 hostile environment claim. As these final judgments in favor of Crawford are now part of the record before us, we affirm the district court's grant of summary judgment for Ohio State on alternative grounds. Whereas the final judgments in favor of Crawford did not render Klemencic's appeal moot, they do preclude her from establishing the first element of a prima facie case against Ohio State under Title IX.

To establish a prima facie case against an educational institution under Title IX, the first element that a plaintiff must establish is that a genuine issue of material fact as to whether she was subjected to *quid pro quo* sexual harassment or a hostile environment exists. *See id.* at 1127. We hold that a plaintiff is precluded from establishing that element where a final judgment has already held that no underlying sex discrimination occurred. An educational institution cannot be liable under Title IX for its response to discrimination that did not exist. In reaching that conclusion, we analogize to our treatment of institutional liability in § 1983 cases.

In *Gebser*, the Supreme Court endorsed the idea that institutional liability under § 1983 and Title IX is comparable. *See Gebser*, 524 U.S. at 291 (stating that "[c]omparable consideration" led it to adopt similar deliberate indifference standards in § 1983 and Title IX actions). It is possible for an educational institution to be a defendant in both § 1983 and Title IX actions, *see Soper v. Hoben*, 195 F.3d 845, 853-55 (6th Cir. 1999), and, when sued under either § 1983 or Title IX, an institution cannot be liable for the acts of its employees under a theory of *respondeat superior*. Instead, where sexual harassment of a student by a school employee is at issue in either a § 1983 or Title IX action, a school is liable only for its own actions. In § 1983 cases, a school would be liable only if a teacher acted pursuant to an official policy, *see id.* at 853 ("A local governmental entity may [only] be held liable under 42 U.S.C. § 1983 for violations of federal law committed pursuant to a governmental policy or custom."), while, in Title IX actions, a school would be liable only if it received actual notice of harassment and responded to it with "deliberate indifference." *See Gebser*, 292-93. In both § 1983 and Title IX cases, institutional liability can attach only if underlying sex discrimination indeed occurred. *See id.* at 290-91 (discussing the elements of a prima facie case under Title IX); *Adkins v. Board of Educ.*, 982 F.2d 952, 957 (6th Cir. 1993) (stating that "[s]ince such bodies can act only through natural persons [under § 1983], the critical question is whether the person committing the act did so pursuant to official policy").