RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0078P (6th Cir.)
File Name: 04a0078p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TRACI GREENE,
　　　　*Plaintiff-Appellant,*

　　　*v.*

GAYLE BOWLES, et al.,
　　　　*Defendants,*

ANTHONY J. BRIGANO,
　　　　*Defendant-Appellee.*

No. 02-3626

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00476—Sandra S. Beckwith, District Judge.

Argued: October 29, 2003

Decided and Filed: March 16, 2004

Before: RYAN, MOORE, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Alphonse A. Gerhardstein, LAUFMAN & GERHARDSTEIN, Cincinnati, Ohio, for Appellant. Elise W. Porter, OFFICE OF THE ATTORNEY GENERAL OF

OHIO, Columbus, Ohio, for Appellee. **ON BRIEF:** Alphonse A. Gerhardstein, Jennifer L. Branch, LAUFMAN & GERHARDSTEIN, Cincinnati, Ohio, for Appellant. Elise W. Porter, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellee.

MOORE, J., delivered the opinion of the court, in which RYAN, J., joined. ROGERS, J. (pp. 9-12), delivered a separate dissenting opinion.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Traci Greene ("Greene") appeals from the grant of summary judgment in favor of Defendant-Appellee Warden Anthony J. Brigano ("Warden Brigano") in Greene's § 1983 suit against Warden Brigano and other prison officials resulting out of an attack on Greene by another inmate. Because we conclude that the district court erred in determining that no issue of fact remains as to whether Warden Brigano acted with deliberate indifference to Greene's safety, we **REVERSE** the district court's judgment **AND REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

Greene is a male-to-female transsexual. At the time of her incarceration at Warren Correctional Institution ("WCI"), she was preoperative, but still displayed female characteristics, including developed breasts and a feminine demeanor, and was undergoing hormone therapy. Because of her feminine appearance, Greene was placed in the Protective Custody Unit ("PCU") to guard against attacks from other inmates. In July 1996, a second inmate in the PCU, Hiawatha Frezzell ("Frezzell"), assaulted Greene on several occasions, culminating in a severe attack on July 12 in which Frezzell

beat Greene with a mop handle and then struck her with a fifty-pound fire extinguisher. Frezzell had a long history of assaults on other inmates and was classified as a maximum-security prisoner; at the time of the attack, Greene was classified as medium-security. By Warden Brigano's own admission, Frezzell was a "predatory inmate." Joint Appendix ("J.A.") at 408. Frezzell had been placed in the PCU at WCI, however, in order to protect him from the repercussions of his testimony against his fellow prisoners in the Lucasville prison riot; Frezzell had been himself convicted of aggravated assault for beating two prisoners during that riot. Nonetheless, for Frezzell's protection from others, Frezzell was placed in PCU with Greene, a medium-security and vulnerable inmate.

After the attack, Frezzell was transferred from the PCU to the segregation unit, and criminally charged with attempted murder. Greene filed suit against Warden Brigano and other prison officials under 42 U.S.C. § 1983, alleging deliberate indifference to her safety in violation of the Eighth and Fourteenth Amendments. Warden Brigano moved for summary judgment arguing that Greene could not as a matter of law demonstrate that he was aware of a substantial risk to her safety; the other defendants moved for summary judgment on the basis of qualified immunity. Summary judgment was granted as to Warden Brigano and denied as to the other defendants; they appealed that decision to this court, which affirmed the denial as to two defendants and reversed as to one. *See Doe v. Bowles*, 254 F.3d 617 (6th Cir. 2001).[1] When summary judgment was granted to Warden Brigano, Greene had filed a motion pursuant to Fed. R. Civ. P. 54(b) asking the district court to allow a cross-appeal on that issue at the same time as the remaining defendants' appeal from the

---

[1]When Greene originally filed suit, she moved to do so anonymously, but that motion was withdrawn in the wake of press reports prior to trial revealing her identity. The interlocutory appeal that this court heard was thus styled *Doe v. Bowles*.

denial of summary judgment based on qualified immunity, which motion the district court denied. A jury trial followed, in which a verdict was rendered for all remaining defendants. After the entry of final judgment, Greene timely appealed the grant of summary judgment to Warden Brigano.

## II. ANALYSIS

### A. Jurisdiction

The underlying civil rights action was brought under 42 U.S.C. § 1983. The district court had original jurisdiction under 28 U.S.C. § 1331. This court has jurisdiction under 28 U.S.C. § 1291.

### B. Standard of Review

We review de novo a grant of summary judgment. *Darrah v. City of Oak Park*, 255 F.3d 301, 305 (6th Cir. 2001).

### C. Deliberate Indifference

The district court granted summary judgment to Warden Brigano on the narrow ground that Greene failed to introduce evidence from which a reasonable trier of fact could conclude that Warden Brigano knew of a substantial risk of serious harm to Greene. Specifically, the court held first that as Frezzell's attack on Greene wasn't sexual, Greene's status was irrelevant to the determination of a substantial risk, and second, that Greene had not offered "evidence from which a trier of fact could conclude that [Warden Brigano] knew of Mr. Frezzell's history of violence and, specifically, of attacks upon other inmates." *Doe v. Bowles*, No. C-1-98-476, slip op. at 14 (S. D. Ohio Jan. 25, 2000), J.A. at 242. The district court did find that Greene had "offered evidence from which a trier of the facts could conclude that Hiawatha Frezzell's presence in the protective custody unit, without segregation or other protective measures, presented a substantial risk of inmate attacks in that unit." *Id.* We reject the district court's

ultimate conclusion for two reasons: first, evidence had been offered from which a trier of fact could conclude that Greene was vulnerable, not just to sexual assault, but also to physical assaults from her fellow inmates, such that her presence in the PCU with other inmates without segregation or protective measures presented a substantial risk to her safety of which Warden Brigano was aware; and second, Greene has presented evidence from which a trier of fact could conclude that Warden Brigano was in fact aware of the substantial risk Frezzell posed to any inmate with whom he was placed in the PCU.

In order to establish liability under the Eighth Amendment for a prison official's failure to protect her, an inmate must demonstrate that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude "that the official was subjectively aware of the risk" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Id* at 829, 847. As noted above, the only issue before this court is whether Greene introduced sufficient evidence to convince a trier of fact that Warden Brigano was aware of a substantial risk of serious harm to Greene. That awareness can be demonstrated through "inference from circumstantial evidence," and a prison official cannot "escape liability . . . by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 842-43. Our cases following *Farmer* demonstrate that the converse is true as well: where a specific individual poses a risk to a large class of inmates, that risk can also support a finding of liability even where the particular prisoner at risk is not known in advance. *See Curry v. Scott*, 249 F.3d 493, 507-08 (6th Cir. 2001) (where particular prison guard had history of racially motivated harassment of African American inmates, deliberate indifference could be demonstrated by factual

record, without threat to particular inmate). Therefore, to defeat Warden Brigano's summary judgment motion, Greene need only point to evidence from which a finder of fact could conclude that her vulnerability made her placement in the PCU with high-security inmates a substantial risk to her safety, of which Warden Brigano was aware, or alternately, evidence from which that finder of fact could conclude that Frezzell's placement in the PCU without segregation or other protective measures presented a substantial risk to other inmates in the PCU, of which Warden Brigano was aware. We conclude that she has done so.

On the issue of her vulnerability, Greene has presented evidence which includes the following: a Protective Control Screening form signed by Warden Brigano on March 17, 1994, noting that Greene was placed in the PCU for her personal safety; numerous Protective Control Review forms signed by Warden Brigano noting Greene's physical appearance as the reason for her placement in the PCU; Warden Brigano's own deposition testimony that transgendered inmates are often placed in protective custody because of the greater likelihood of their being attacked by their fellow inmates; Warden Brigano's admission that the universe of harm that can befall inmates like Greene includes attempted assault, assault, attempted murder, and murder; and Warden Brigano's concessions that Greene was placed in the PCU to protect her from serious harm and that that serious harm could come from a fellow PCU inmate as well as an inmate in the general population. On the issue of Frezzell's predatory nature, Greene has presented to the district court: Frezzell's lengthy prison misconduct record, including Frezzell's two convictions for felonious assault arising out of the Lucasville prison riot; Warden Brigano's admission of Frezzell's status as a predatory inmate; Warden Brigano's concessions that Frezzell had "a long institutional history of being a disruptive, violent inmate," J.A. at 409; and the fact that Frezzell was a maximum-security inmate. While contrary and conflicting evidence was presented to the district court by Warden Brigano, we must, when reviewing a

summary judgment, resolve all questions of fact in favor of the non-moving party. Greene has raised an issue of fact as to Warden Brigano's knowledge of a risk to her safety because of her status as a vulnerable inmate and because of Frezzell's status as a predatory inmate.

### D.  Effect of the Jury Verdict Below

Finally, we reject Warden Brigano's assertion that the jury's verdict below finding that his subordinates were not liable to Greene precludes Warden Brigano's own liability to her.   In order to prevail on her claim of deliberate indifference, Greene must show that Warden Brigano himself was aware of a substantial risk to her safety and did not take reasonable steps to guard against that risk. Neither of those elements was before the jury below, and its verdict can therefore have no preclusive effect on Greene's claim against Warden Brigano. Warden Brigano's reliance on *Klemencic v. Ohio State University*, 263 F.3d 504 (6th Cir. 2001), is unavailing. *Klemencic* dealt with a Title IX claim of quid-pro-quo sexual harrassment against a coach and his university employer.[2] The district court had granted summary judgment in favor of the university, and a jury had given a verdict in favor of the defendant coach. The plaintiff appealed from the grant of summary judgment, and a panel of this court found that the jury verdict precluded a claim against the university. In doing so, however, the court clearly relied on the elements of a claim against an educational institution:   1) that a plaintiff was subject to harassment; 2) that she provided actual notice to the institution; and 3) that the institution's response amounted to deliberate indifference. *See id.* at 510 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)). The jury verdict, which had preclusive effect on the issue of whether the coach had subjected the plaintiff to

---

[2]The plaintiff also raised a hostile-work-environment claim which was disposed of as to all defendants on summary judgment and is therefore unimportant for our analysis.

sexual harassment, therefore went right to the heart of the first element for Title IX liability.  In Greene's claim against Warden Brigano's subordinates that went to trial below, the elements Greene would have had to show to succeed related only to the mental state of those subordinates, and not to Warden Brigano's mental state.  Neither of the elements Greene must show to succeed on her claim against Warden Brigano were before the jury, and its verdict can therefore have no preclusive effect on that claim.

### III.  CONCLUSION

Because material questions of fact remain as to Warden Brigano's knowledge of a substantial risk to Greene, we conclude the district court erred in granting summary judgment to Warden Brigano. We therefore **REVERSE** the district court's judgment **AND REMAND** for further proceedings consistent with this opinion.

## DISSENT

ROGERS, Circuit Judge, dissenting. Although the Eighth Amendment requires prison officials to maintain humane conditions of confinement, a prison official's actions do not violate the Eighth Amendment unless they are shown to be deliberately indifferent. Deliberate indifference means that the prison official had actual knowledge of a substantial risk to inmate health or safety and ignored that risk or proceeded in the face of it. Because Greene has failed to show that Warden Brigano was deliberately indifferent to the risk posed to her by Frezzell's presence in the protective custody unit, I respectfully dissent.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement and to take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As the Supreme Court has explained, however, a prison official's actions or omissions do not trigger liability under the Eighth Amendment without a finding of deliberate indifference, which is the equivalent of "recklessly disregarding" a risk. *Id*. at 835. Under the Supreme Court's clear instruction in *Farmer*, Greene must establish not only that Warden Brigano was aware of facts from which one could raise the inference of a substantial risk of harm to her safety, but also that Warden Brigano, in fact, drew that inference. *Id*. at 837. This requirement exists because the Eighth Amendment does not extend liability to a prison official's failure to exercise due care, but only extends liability to such willful disregard as can be considered the infliction of punishment.

The only evidence cited by Greene that suggests that Warden Brigano actually drew the inference that Greene faced a substantial risk of harm in the protective custody unit

is Warden Brigano's admission that harms may befall protective custody inmates. Such a statement can hardly be enough to create a triable issue of fact as to Warden Brigano's awareness of the risks facing Greene. At most, this admission is a concession that prison life is inherently dangerous, and particularly so for transgendered inmates. The fact that Warden Brigano recognized the existence of certain risks attendant with the placement of certain categories of inmates in protective custody, however, does not amount to an awareness of a significant risk of harm to Greene's health or safety. The Eighth Amendment requires, instead, that a warden actually recognize a significant risk of harm arising from particular facts. While the majority properly states that, in some contexts, a particular victim, or a particular perpetrator, need not be known, general recognition of some risks is not enough.

This is borne out by the very example given by the Supreme Court as sufficient to raise a triable issue of fact:

> For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Id*. at 842-43 (internal quotations omitted). The evidence in this case cannot fairly be characterized as comparable to the Supreme Court's example.

Greene first contends that her feminine appearance made it obvious that she was vulnerable to attack by other inmates. Warden Brigano was aware of this risk, and that was the reason that Greene was assigned to protective custody.

Greene then alleges that Hiawatha Frizzell's prior conduct and sexual advances in her direction made it obvious that she was at a substantial risk to her health and safety. While Greene has adduced facts indicating the existence of the risk, she certainly has failed to show that Warden Brigano ever drew the inference that these facts constituted such a risk. As to Frizzell's conduct, although Warden Brigano was aware that Frizzell had a disciplinary record indicating some predatory conduct, Warden Brigano also indicated that his impression of Frizzell's demeanor was "nothing out of the ordinary." As to Greene's allegations of Frizzell's sexual advances, she has not indicated that Brigano was ever even aware of Frizzell's conduct in that regard. Without showing some particular facts that should have triggered alarm bells in Warden Brigano's mind, based on his knowledge and experience, Greene has not raised a material issue of fact as to Warden Brigano's awareness of the risk to her safety.

Moreover, although the majority does not reach the issue, Greene's claim should fail if she cannot show that Warden Brigano actually disregarded the risk. Greene maintains that Warden Brigano's recognition of the risks she faced in the general population should have triggered an awareness of commensurate risks in protective custody and that when he failed to provide additional protections, he was deliberately indifferent. This claim must fail, because *Farmer* makes it clear that a prison official's duty under the Eighth Amendment is only to insure "reasonable safety," and this standard "incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer*, 511 U.S. at 844-45.

The effect of the majority's opinion in this case is to impose an objective standard of deliberate indifference—a position explicitly rejected by the Supreme Court. *See Farmer*, 511 U.S. at 837. Although a reasonable person may well have reached the conclusion based on this body of facts that Greene was in danger, the appropriate test is whether *Warden Brigano* reached the conclusion that Greene was in

particular danger. Greene has clearly failed to establish a triable issue as to Warden Brigano's awareness in this case.

Moreover, the majority takes a position that will make it more difficult for prison officials to deal with the complicated issues involved in incarcerating pre-operative transsexual inmates. These inmates may not be well-suited to the general populations of either men's or women's institutions, and protective custody may be a warden's best alternative to provide for the safety and security of transsexual inmates. The majority's broad position that protective custody poses *obvious harms* to transsexual inmates could impel correctional officials to avoid liability for harms to these inmates by either placing all transsexual inmates in individual isolation or by building prisons solely for transsexuals. The Eighth Amendment cannot be read to compel such a result.