CLD-226                                                   NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2203
_____

JAMES R. SMITH,
Appellant

v.

GEORGE HAYMAN,
Commissioner of the New Jersey Department of Corrections (NJDOC);
MS. MICHELLE RICCI, Administrator of New Jersey State Prison (NJSP);
DOCTOR RUSTY REEVES, Director of Psychiatry;
DOCTOR JORDAN LIEBERMAN, Doctor, Doctor, New Jersey Regional of Psychiatry;
DOCTOR FLORA DEFILIPPO, N.J. State Prison Lead Psychiatrist;
DOCTOR RAY BAUM, Psychiatrist;
DOCTOR MARINA MOSHKOVICH, Doctor, N.J. State Prison Psychiatrist;
MS. KEASHA BALDWIN, Clinical Social Worker; JOHN/JANE DOES # 1-20
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:09-cv-02602)
District Judge:  Honorable Peter G. Sheridan
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 12, 2012

Before:  RENDELL, HARDIMAN and COWEN, Circuit Judges

(Opinion filed:  July 25, 2012)
_____

OPINION OF THE COURT
_____

PER CURIAM

James R. Smith, a New Jersey prisoner proceeding pro se and in forma pauperis, appeals a series of District Court orders that dismissed his[1] civil-rights complaint in part and granted summary judgment for the defendants in part. For the reasons that follow, we will summarily affirm.

I.

In his 2009 lawsuit, which was brought under 42 U.S.C. § 1983, Smith accused the defendants—various medical professionals and administrators associated with the New Jersey State Prison, where he was and continues to be incarcerated—of violating his constitutional rights.[2] Specifically, he alleged that the defendants: 1) subjected him to cruel and unusual punishment, failed to protect him, and failed in their obligation to provide him with adequate medical care, in contravention of the Eighth Amendment; 2) violated his rights under the Equal Protection Clause of the Fourteenth Amendment; 3) deprived him of his constitutional entitlement to privacy; and 4) retaliated against him for complaining about his treatment and conditions in the prison. These claims arose out of Smith's attempts to be diagnosed with and treated for Gender Identity Disorder ("GID").

_____

[1] As this case involves a gender-identity issue, our choice of pronoun is freighted with greater-than-usual significance. Because Smith has, throughout this litigation, referred to himself using male pronouns—see, e.g., Pl.'s Opp'n to Def. DeFilippo's Mot. for J. on the Pleadings 2, ECF No. 70—we will follow his example.

[2] Because we write primarily for the parties, we will not substantially recite the facts of the case, which were developed at length in the various District Court opinions.

2

He asserted that, while born "biologically male," he was "psychologically and emotionally female." Compl. ¶ 14. Despite this, however, the defendants refused to properly treat him, would speak to him only in public areas of the facility that were not conducive to confidential discussion, improperly disclosed his GID status to other parties, and placed him with a cellmate.

Smith's claims were dismissed in a piecemeal fashion throughout the course of the multi-year litigation in the District Court. First, pursuant to its screening responsibilities under the Prison Litigation Reform Act, the District Court determined that Smith's complaint failed to adequately state a failure-to-treat or Equal Protection claim. See Smith v. Hayman, No. 09-2602, 2010 U.S. Dist. LEXIS 15612, at *32–33, 35–36 (D.N.J. Feb. 19, 2010). Smith also agreed to discontinue his suit against defendants George Hayman, Rusty Reeves, Jordan Lieberman, and Ray Baum. See ECF Nos. 28, 61. Following discovery, the remaining allegations were resolved when the District Court granted summary judgment in favor of the defendants. See Smith v. Hayman, No. 09-2602, 2012 U.S. Dist. LEXIS 44888 (D.N.J. Mar. 30, 2012); Smith v. Hayman, No. 09-2602, 2012 U.S. Dist. LEXIS 6220 (D.N.J. Jan. 19, 2012). This appeal followed.[3]

## II.

We have jurisdiction under 28 U.S.C. § 1291. Both a sua sponte dismissal

---

[3] Smith has submitted an application for a certificate of appealability, which is not necessary for the purposes of this non-habeas appeal. See 28 U.S.C. § 2253(c). Although the Clerk entered a "no action" order on June 25, we have nevertheless considered the arguments Smith raises in his application.

pursuant to a Court's screening responsibilities and a grant of summary judgment are subject to plenary review. Banks v. Int'l Rental & Leasing Corp., 680 F.3d 296, 297 n.1 (3d Cir. 2012); Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). To survive a motion to dismiss, a plaintiff must plead enough facts, accepted as true and with all reasonable inferences drawn in his favor, to state a claim to relief that is plausible on its face. Birdman v. Office of the Governor, 677 F.3d 167, 171 (3d Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A summary judgment motion, by contrast, requires us to consider "whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiffs," construing the facts in favor of the nonmovant and resolving all justifiable inferences in his favor. Banks, 680 F.3d at 297 n.1; Meditz v. City of Newark, 658 F.3d 364, 369 (3d Cir. 2011). We may affirm the judgment of the District Court on any grounds that support its decision, even if the District Court itself did not rely upon them. See Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 333 n.8 (3d Cir. 2000).

III.

A) Dismissed Claims[4]

---

[4] In his complaint, Smith sued most of the defendants in their official capacities; moreover, the complaint inconsistently allocated its demands for money damages and equitable relief. Compare Compl. ¶¶ 144–47 (seeking injunctive relief), with Compl. 41 (seeking monetary damages against "each defendant"). To the extent that monetary relief was sought from defendants who were acting as employees or agents of the New Jersey Department of Corrections, such an action would be barred by Eleventh Amendment immunity. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 253–54 (3d Cir.

Smith argued that the defendants neglected to adequately treat his GID and violated his rights under the Equal Protection Clause. Having reviewed the complaint, we agree with the District Court that he failed to state a claim upon which relief could be granted.

A state is obligated "to provide medical care for those whom it is punishing by incarceration"; accordingly, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain[]' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 103–04 (1976) (citations omitted). Deliberate indifference inheres in an official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05. On the other hand, allegations of medical malpractice, or of mere disagreement over medical treatment that *is* provided, do not rise to a constitutional level. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Moreover, courts may not second guess the propriety of a particular course of treatment, especially in the presence of sound professional judgment. See Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762

2010); cf. Lavia v. Pennsylvania, 224 F.3d 190, 195 (3d Cir. 2000) (observing that the Pennsylvania Department of Corrections shares in the Commonwealth's immunity). To the extent that Smith sought relief from the defendants as agents of the University of Medicine and Dentistry of New Jersey, official-capacity suits were *not* barred by Eleventh Amendment immunity. See Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 663 (3d Cir. 1989) (citing Fuchilla v. Layman, 537 A.2d 652, 657 (N.J. 1988)). Mindful of our "special obligation" to construe liberally the pleadings of pro se litigants, Zilich v. Lucht, 981 F.2d 694, 694 (3d Cir. 1992), we will proceed as if those claims barred by Eleventh Amendment immunity were also raised against the defendants in their individual capacities.

5

(3d Cir. 1979).

The complaint contains numerous references to treatment that was provided to Smith, such as psychiatric testing (Compl. ¶ 46) and counseling (Compl. ¶ 94). This did not satisfy Smith, who sought (inter alia) hormone-replacement therapy and permission to present himself as a woman. See, e.g., Compl. ¶ 44. While in certain circumstances the failure to provide hormones and other courses of treatment can be constitutionally impermissible,[5] the allegations of the present case do not show ignorance or an affirmative failure to treat, but rather caution and diagnostic disagreement. Such circumstances, in the absence of aggravating factors such as previous GID treatment or even a definitive GID diagnosis, do not rise to the level of constitutional violation. See Praylor v. Tex. Dep't of Crim. Justice, 430 F.3d 1208, 1209 (5th Cir. 2005) (per curiam) (holding that, when plaintiff had been evaluated on multiple occasions and denied eligibility for hormone treatment, "the instant record and circumstances . . . do[] not constitute deliberate indifference"); Long v. Nix, 86 F.3d 761, 765–66 (8th Cir. 1996).

Smith's Equal Protection claim also fails. Crucially, he has not shown that he "has been treated differently from persons who are similarly situated." Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003). His identification with female prisoners is, in this context, conclusory. Nor has he successfully pleaded a "class of one" claim. See Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010).

Therefore, the District Court correctly screened out these claims.

6

B) Summary Judgment

   i) DeFilippo

   Defendant DeFilippo, whose motion for judgment on the pleadings was converted into one for summary judgment, argued that the record failed to demonstrate any personal involvement in potential constitutional violations.  The District Court concluded that Smith "provide[d] no facts describing how DeFilippo, in a supervisory capacity, allegedly violated his constitutional rights, i.e., he fail[ed] to allege facts to show that this defendant expressly directed the deprivation of his constitutional rights, or that she created policies which left subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation."  Smith, 2012 U.S. Dist. LEXIS 6220, at *23–24.  We agree.  Aside from her response to a communiqué from Smith and a short correspondence with defendant Ricci, DeFilippo was not involved in the present controversy, and it is well established that respondeat superior cannot form the basis of constitutional liability.  See Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010).  Thus, summary judgment was appropriately granted in her favor.

   ii) Failure to Protect

   Smith alleged that his current "double-lock" housing assignment constituted a failure to protect him from other inmates, although it appears that no harm actually transpired.  See Helling v. McKinney, 509 U.S. 25, 33 (1993) (Eighth Amendment protects against future harm as well as present harm).  But he has failed to present any

---

[5] See, e.g., Meriwether v. Faulkner, 821 F.2d 408, 412–13 (7th Cir. 1987).

evidence that the defendants knew of and disregarded an excessive risk to his health or safety. Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994). The record is devoid of suggestions that he personally was vulnerable at the time he was transferred or that he was likely to become so in the near future. Compare Greene v. Bowles, 361 F.3d 290, 294–95 (6th Cir. 2004) (substantial proffer of vulnerability and violent tendencies of assailant); Taylor v. Mich. Dep't of Corr., 69 F.3d 76, 82–83 (6th Cir. 1995) ("A review of the record reveals a prison system in crisis."). While we are obligated to draw all factual inferences in Smith's favor, outside of deposition reference to protective custody, see Smith Dep. 60:7–62:22, ECF No. 83-4, we are unable to discern any indication that Smith, as he currently presented his gender identity and in his current state, would have been excessively unsafe in the custody to which he was assigned. The defendants were therefore entitled to summary judgment.

iii) Retaliation

Smith alleged that defendant Ricci retaliated against him for "filing remedy forms against the law library [and a] whole lot of [other] things" by transferring him to a double-occupancy cell. Smith Dep. 64:6–13. He speculated that she did so "in hopes that the plaintiff would cause a ruckus so that the administration can place the plaintiff into lockup in hopes of quieting him." Compl. ¶ 113.

In order to sustain a retaliation claim, Smith was required to show that 1) he

8

engaged in constitutionally protected conduct, 2) he suffered adverse action,[6] and 3) the constitutionally protected conduct was "a substantial or motivating factor" of the adverse response. Carter v. McGrady, 292 F.3d 152, 157–58 (3d Cir. 2002). Apart from temporal proximity, Smith failed to submit any evidence probative of retaliation. Nor has he shown that the cell transfer was such that a person of ordinary firmness would have been deterred from exercising his constitutional rights in its wake. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). We therefore agree with the District Court that summary judgment was warranted on this claim.

iv) Privacy Violations

Finally, Smith claimed that the defendants (principally Moshkovich and Baldwin) violated his constitutional right to privacy. He cited their decision to hold confidential counseling sessions within view and within potential earshot of other inmates, as well as assailing their disclosure of private medical information.

We have held that "the Fourteenth Amendment protects an inmate's right to medical privacy, subject to legitimate penological interests." Doe v. Delie, 257 F.3d 309, 323 (3d Cir. 2001). In Doe, a inmate who was HIV positive was informed that his

---

[6] The District Court held that, because Smith "ha[d] no protected constitutional right to a housing assignment, he [could ]not claim 'adverse action' when his housing assignment was changed." Smith, 2012 U.S. Dist. LEXIS 44888, at *61. However, whether the alleged retaliation affected a recognized liberty interest is irrelevant, because actions that are not themselves constitutional torts may become so if substantially motivated by the desire to punish an individual for exercising a constitutional right. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Because Smith's retaliation claim fails for other reasons, this error is harmless.

9

condition would be kept confidential; however, prison procedures led to repeated disclosures of his status, as "staff informed the escorting officers of Doe's medical condition," and nurses "announced his medication loudly enough for others to hear." Also, the door to the examination room was kept open, allowing "officers, inmates, and guards in the area to see and hear Doe and the treating physician." Id. at 311–12. In another case, the United States Court of Appeals for the Second Circuit emphasized that "individuals who are transsexuals are among those who possess a constitutional right to maintain medical confidentiality," arising from a situation in which a guard announced the plaintiff's status "in the presence of other inmates and staff members." Powell v. Schriver, 175 F.3d 107, 109, 112 (2d Cir. 1999).

As a preliminary matter, the record is devoid of any evidence that the defendants improperly "disclosed" any of Smith's medical information. Outside of discussions between medical staff members and between DeFilippo and Ricci at Smith's instigation—surely an example of a legitimate penological interest—Smith points to nothing that would suggest a gratuitous disclosure to inappropriate parties.[7]

Thus, the gravamen of Smith's complaint is limited to the public nature of his discussions with Baldwin and Moshkovich, both of whom appear to concede that the situation, while less than ideal, was the best that could be managed given the lack of

---

[7] Because we independently agree with the New Jersey state court on this ground, we need not decide whether its opinion has preclusionary force.

10

other, more-private, secure environments. See generally Moshkovich Aff., ECF No. 83-8, Baldwin Aff., ECF No. 83-9. We note, first, that both Moshkovich and Baldwin claim that conversations were conducted with awareness of the proximity of corrections officers and inmates, with efforts made to ensure that no other person could overhear the topics of discussion. Moshokovich Aff. ¶ 10, Baldwin Aff. ¶ 10. Second, Smith agreed that he was informed that the guards were not listening in on the conversation. Smith Dep. 46:5–11. Third, there is no indication that any parties actually overheard the discussions.

While Smith is justified in his displeasure with this arrangement, the record does not demonstrate that the defendants violated a clearly established constitutional right. See Montanez v. Thompson, 603 F.3d 243, 249 (3d Cir. 2010). Our holding in Doe recognized that the right to privacy was counterbalanced by legitimate penological interests, such as safety and practicability of accommodation. Smith's reliance on an unpublished summary order from the Court of Appeals for the Second Circuit is misplaced; the plaintiff in Hunnicutt v. Armstrong, 152 F. App'x 34 (2d Cir. 2005) (per curiam), alleged that the defendants discussed private health issues in public, allowed non-health staff access to his records, and violated psychiatrist/patient privilege, which was sufficient to "achieve[] the goal of fair notice" and avoid dismissal under Fed. R. Civ. P. 8(a). Id. at 35–36. In other words, Hunnicutt is a pre-Twombly/Iqbal decision about pleading standards; its Panel specifically "express[ed] no view on whether other grounds exist[ed] to dismiss the complaint once it [wa]s amended." Id. at 36. We are

11

aware of no case law, and Smith points to none, that would suggest that the conduct of the defendants, in light of their attempts to avoid disclosure, violated a clearly established constitutional right, and <u>Doe</u> did not establish any such rule with "obvious clarity." <u>Sharp v. Johnson</u>, 669 F.3d 144, 159 (3d Cir. 2012). Accordingly, we hold that the defendants were entitled to qualified immunity on this claim. <u>See id.</u>[8]

IV.

For the reasons expressed above, this appeal does not present a substantial question, and we will summarily affirm the judgment of the District Court. <u>Murray v. Bledsoe</u>, 650 F.3d 246, 248 (3d Cir. 2011) (per curiam); <u>see also</u> 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

---

[8] Smith repeatedly invokes the defendants' alleged violations of, inter alia, internal management procedures and agency regulations. But 42 U.S.C. § 1983 provides relief for violation of federal laws, not for violation of state or local law. <u>McMullen v. Maple Shade Twp.</u>, 643 F.3d 96, 99 (3d Cir. 2011).