NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0406n.06
Filed: June 19, 2007

No. 05-2678

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TIMOTHY WILLIAMS, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| BARRY MCLEMORE, HAROLD WHITE, | ) | |
| HAROLD WARR, and WILLIAM BAILEY, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| _____ | ) | |

BEFORE: ROGERS and GRIFFIN, Circuit Judges; and RUSSELL, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff Timothy Williams, a Michigan state prisoner, sues under 42 U.S.C. § 1983 for an alleged violation of his Eighth Amendment rights and of the Americans with Disabilities Act ("ADA"). Defendants Barry McLemore, Harold White, Harold Warr, and William Bailey appeal the district court's October 27, 2005, order denying their motion for summary judgment. Defendants argue that they are entitled to qualified immunity from Williams's claims and that the ADA does not provide for a cause of action against government officials sued in their individual capacities. Williams contends that the law-of-the-case doctrine precludes defendants' appeal, that defendants

_____

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

are not entitled to qualified immunity from his claims, and that defendants have forfeited their argument that Williams is not entitled to relief under the ADA.  For the reasons set forth below, we reverse the district court's October 27, 2005, order with respect to Williams's ADA claims, affirm with respect to Williams's Eighth Amendment claim against defendant McLemore, and reverse with respect to Williams's Eighth Amendment claims against defendants Warr, White, and Bailey.

I.

On January 13, 1998, Williams handed a note to Josephine McCallum Facility ("JMF") Officer Meeks stating that he had enemies and that he feared for his life.[1]  In response, Williams was transferred from JMF to the State Prison of Southern Michigan ("SMI").  Officer Meeks recommended that Williams be placed in temporary segregation until proper placement could be determined by the Security Classification Committee ("SCC").

A hearing on Williams's note was scheduled for January 15, 1998.  When defendant Officer Harold Warr and unknown Officer John Doe came to Williams's cell and attempted to transport him to the meeting, Williams refused to be handcuffed behind his back.  Williams informed the guards that he suffers from a congenital deformity known as Kasabach-Merritt Syndrome, which causes his hand to be curled at the wrist, limits his range of motion, and presents multiple tumors.  Williams insisted that he be handcuffed in the front with special large cuffs as a result of his deformity.  The

---

[1]The note stated:  "I have enemies here at J.M.F. and I'm asking for protection, because I am afraid for my life.  One of the guys name is Lovejoy-Bey.  And they call one by the name of 'Foots.' I'm afraid to come out in the morning."

officers requested that Williams produce "medical detail" documenting his need for enlarged cuffs, but Williams was unable to produce any such documentation.

The officers then sought guidance from Deputy Warden Connie Anderson.[2] Deputy Warden Anderson told the guards that Williams would have to submit to normal cuffing or forfeit his interview with the SCC. When Williams refused to submit to normal cuffing, he was ordered to be transferred back to JMF. On January 16, 1998, due to his failure to attend the SCC interview, Williams was ordered to vacate his cell at SMI and to return to JMF. Williams refused, explaining that he feared for his life if he returned to JMF. Due to his resistance, Williams received a misconduct ticket that resulted in a fourteen-day detention at SMI.

During his segregation, Williams filed a grievance, claiming that he should not have received the misconduct ticket because he only sought to prevent his return to JMF. Defendant Harold White

---

[2]The status of Connie Anderson with respect to this lawsuit is in dispute. Anderson was named as a defendant in Williams's amended complaint. In this court's February 1, 2001, order, we instructed the district court to serve the amended complaint on all defendants, including Anderson. *Williams v. McLemore*, 10 F. App'x 241, 244 (6th Cir. 2001) (unpublished). The district court attempted to serve Anderson, but its summons was returned on March 9, 2001, as Anderson had retired and was no longer employed at the State Prison of Michigan. In its July 15, 2004, Memorandum and Opinion dismissing Williams's complaint for failure to exhaust administrative remedies, the district court noted that "Anderson was originally named as a Defendant to this action. She is not a party to this action, however." On October 27, 2005, Williams moved to compel the district court to issue summons on and serve Connie Anderson. The court granted Williams's motion, and entered an Order Issuing Summons and Directing Service on Connie Anderson. On December 12, 2005, Williams notified the court that Anderson had passed away on May 24, 2005, and moved the court to substitute the executrix of Anderson's estate for Anderson as a defendant. On January 23, 2006, the district court held a hearing concerning Williams's motion to substitute. Following the hearing, the court entered an Order of Substitution, ordering that Janine Jordan, the executrix of Anderson's estate, be substituted as a defendant for Anderson. Jordan has appealed that order, which is the subject of a separate appeal.

responded to this grievance at the second step in the three-step process. Director Kenneth McGinnis, the third and final respondent to Williams's grievance appeal, found several errors with regard to Williams's treatment – concluding that Williams "has a physical impairment which calls for special cuffs to be used for handcuffing" – and forwarded Williams's grievance to defendant Warden Barry McLemore "to ensure that appropriate action is taken on this issue." Director McGinnis, however, did not specifically order McLemore to provide Williams another opportunity for a hearing with the SCC.

On February 4, 1998, Williams gave prison officials a note stating that he planned to get his enemies upon his return to JMF. The prison staff construed the note as threatening behavior and issued Williams a second misconduct ticket, detaining him at SMI for an additional thirty days. Williams again filed a grievance, claiming that he incurred the ticket only to prevent his transfer to JMF. On April 9, 1998, at the second step in the grievance process, defendant Barry McLemore denied Williams's grievance. At the third step in the process, McGinnis denied Williams's grievance appeal, finding that no violation of policy had occurred and that the "record presented with the appeal does not suggest that further action is justified at this level."

Williams did not receive a hearing on his safety concerns and was returned to the general population at JMF on August 26, 1998. Nearly one month later, on September 25, Williams was stabbed by an unknown assailant while in the gym. Williams filed a pro se action on September 18, 1998, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Williams

subsequently amended his complaint to add additional constitutional claims and to allege violations of the ADA.[3]

Williams's amended complaint included the following § 1983 claims: Eighth Amendment failure to protect, cruel and unusual punishment, retaliation, violation of the ADA, and First Amendment access to the courts. On October 27, 1999, defendants first moved for summary judgment. In an order dated January 10, 2000, the district court considered the merits of each of Williams's claims and granted defendants' motion. With respect to Williams's failure to protect claim, the court concluded that defendants' "act of returning Plaintiff to JMF does not form a pattern of undisputed violence or an egregious failure to provide security to Plaintiff." With respect to Williams's ADA claim, the district court held that on the date Williams refused cuffing, "he did not have a disability as defined by the ADA" and, therefore, summary judgment in favor of defendants on this claim was proper.

On appeal, we reversed, holding that the district court erred in granting summary judgment to defendants before they were served with Williams's second amended complaint. *Williams v. McLemore*, 10 F. App'x 241, 242 (6th Cir. 2001) (unpublished). We did not address the merits of the district court's January 10 order.

After being served with Williams's second amended complaint, defendants filed a motion to dismiss or, in the alternative, for summary judgment on August 30, 2001. The district court

---

[3]In his original complaint, Williams alleged that defendants violated his Eighth and Fourteenth Amendment rights in refusing to handcuff him using larger cuffs. He amended his complaint following his alleged attack to include his failure to protect and ADA claims.

granted in part and denied in part defendants' motion. The court noted that Williams had conceded that his claim was "now focused on two basis for relief: deliberate indifference in the failure to provide him protection and the violation of the ADA which resulted in his being denied a hearing on his request for protection," and thus dismissed all but these two remaining claims. With respect to Williams's failure to protect claim, the court concluded that Williams had "alleged sufficient facts from which a trier of fact could conclude that Defendants subjectively perceived a serious risk to Plaintiff's safety" and consequently denied defendants' motion for summary judgment. With respect to Williams's ADA claim, the court held that Williams "at the very least states a claim under the ADA" and denied defendants' motion. The court held further that qualified immunity was not available to defendants on either claim. The court did not explain why its conclusions differed from those expressed in its January 10, 2000, order granting defendants' motion for summary judgment.

On March 15, 2004, defendants once again moved for summary judgment. The district court granted defendants' motion on July 15, 2004, concluding that Williams had failed to plead exhaustion of remedies in his original complaint. On appeal, we reversed, holding that the district court erred in looking only to Williams's original – rather than amended – complaint to determine whether he had sufficiently pled exhaustion. *Williams v. McLemore*, 148 F. App'x 342, 344 (6th Cir. 2005) (unpublished). We found that Williams had sufficiently pled exhaustion in his amended complaint and reversed and remanded for further proceedings. *Id.*

Defendants once again moved for summary judgment on August 30, 2005. The court held a hearing on defendants' motion on October 17, 2005. After hearing arguments from both parties, the court concluded that it was "constrained to deny the Motion for Summary Judgment . . . for

essentially the same reasons that the Court once before denied the Motion for Summary Judgment in this case." The court entered an order denying defendants' motion for summary judgment on October 28, 2005. Defendants timely appealed.

II.

Although not contested by either party, we must first decide whether we have jurisdiction to consider defendants' appeal. Title 28 U.S.C. § 1291 limits our jurisdiction to "final decisions of the district courts of the United States. . . ." A district court's denial of qualified immunity is a final decision, appealable pursuant to 28 U.S.C. § 1291, but only "'to the extent that it turns on an issue of law.'" *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). A defendant raising a qualified immunity defense "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995); *see also Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998) ("A defendant who is denied qualified immunity may file an interlocutory appeal with this Court only if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law."). Nevertheless, that the district court here denied defendants' motion for summary judgment on the grounds that genuine issues of material fact exist does not necessarily preclude this court's jurisdiction over defendants' appeal. Rather, as we have recognized, *"regardless of the district court's reasons* for denying qualified immunity, [this court] may exercise jurisdiction over the [defendants'] appeal to the extent it raises questions of law." *Williams v.*

*Mehra*, 186 F.3d 685, 689-90 (6th Cir. 1999) (en banc); *see also Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

Language in our earlier decisions interpreting *Johnson* suggests that where the appellant fails to concede the facts as alleged by the appellee, we are deprived of jurisdiction over the appellant's interlocutory appeal. *See Berryman*, 150 F.3d at 563 ("If . . . the defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal."). Subsequent cases, however, have rejected that approach and clarified that we may consider a pure question of law, despite the defendants' failure to concede the plaintiff's version of the facts for purposes of the interlocutory appeal: "If . . . aside from the impermissible arguments regarding disputes of fact, the defendant also raises the purely legal question of whether the facts alleged . . . support a claim of violation of clearly established law, then there is an issue over which this court has jurisdiction." *Estate of Carter*, 408 F.3d at 310 (internal quotations and citation omitted); *see also Smith v. Cupp*, 430 F.3d 766, 772 (6th Cir. 2005); *but see McKenna v. City of Royal Oak, et al.*, 469 F.3d 559, 561 (6th Cir. 2006) (holding this court lacks jurisdiction to consider interlocutory appeal where appellant relies solely on disputed facts).

We conclude that we have jurisdiction over defendants' interlocutory appeal to consider whether, interpreting the facts as alleged by Williams, defendants are entitled to qualified immunity from Williams's Eighth Amendment claims. *See Mehra*, 186 F.3d at 690 (instructing that court has jurisdiction to consider whether facts, as alleged by plaintiff, entitle defendant to summary judgment); *Berryman*, 150 F.3d at 562 (same). At oral argument, counsel for defendants conceded

Williams's version of the facts for purposes of this appeal and argued that, even accepting Williams's pleadings as true, defendants are entitled to qualified immunity from Williams's Eighth Amendment claim. Counsel's concession makes clear that we have jurisdiction over defendants' interlocutory appeal with respect to Williams's Eighth Amendment claim. *See Estate of Carter*, 408 F.3d at 310.

We conclude further that we have jurisdiction to consider defendants' interlocutory appeal concerning Williams's § 1983 claim based on the ADA. Defendants couched their argument in terms of a qualified immunity defense, and we interpret the district court's denial of summary judgment as a denial of qualified immunity. We therefore have jurisdiction to consider defendants' interlocutory appeal arising from the district court's denial of defendants' motion to dismiss Williams's ADA claim for failure to state a claim for which relief can be granted. *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005); *Key v. Grayson*, 179 F.3d 996 (6th Cir. 1999).

III.

We review the district court's entry of summary judgment de novo. *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 660 (6th Cir. 2005). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To the extent that there is disagreement about the facts, this court must review the evidence in the light most favorable to the plaintiff, taking all inferences in his favor. *Champion v. Outlook Nashville*, 380 F.3d 893, 900 (6th Cir. 2004).

IV.

Williams first argues that the law-of-the-case doctrine bars defendants' appeal, contending that "the issues raised in this appeal were raised by the Appellants in a previous motion for summary judgment and ruled on by the District Court on June 27, 2002 and Defendant failed to appeal as of right at that time." "The law-of-the-case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The doctrine bars a court from reconsidering issues "decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (quoting *Coal Res., Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 766 (6th Cir. 1989)).

The doctrine can be applied in two circumstances. Where an appellate court has determined an issue of law – either explicitly or implicitly – a lower court may not depart from that determination, unless under one of three "exceptionally narrow" grounds: (1) "when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 F. App'x 976, 987 (6th Cir. 2006) (quoting *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000)). Where, however, a court seeks to revisit its own earlier determination, it has more freedom to do so, and its exercise of that freedom is reviewed for an abuse of discretion. *Pac. Employers Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 398-99 (6th Cir. 2002). Thus, "the

law-of-the-case doctrine is rigidly applied to enforce a lower court's obedience to a higher court; however, the doctrine is more flexibly applied to reconsideration of earlier decisions by the same court or a coordinate court." *United States v. Dunbar*, 357 F.3d 582, 592 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1099 (2005). Williams's argument concerns the second scenario.

Williams argues that defendants are barred from bringing this appeal because they did not appeal the district court's June 27, 2002, Memorandum and Opinion, in which the district court held that defendants were not entitled to qualified immunity from Williams's claims. Defendants argue that the law-of-the-case doctrine is inapplicable to this case. They contend that, although they were entitled to file an interlocutory appeal to the district court's June 27, 2002, order, they were not required to do so, and their failure to raise such an appeal does not trigger the law-of-the-case doctrine. We agree with defendants. In *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996), the Court held that a defendant who has been denied qualified immunity in an interlocutory appeal filed after the denial of a motion to dismiss may, nonetheless, file a second interlocutory appeal following a district court's denial of the defendant's motion for summary judgment. That defendants did not exercise their right to file an interlocutory appeal of the district court's June 27, 2002, order does not preclude them from raising the present appeal.

V.

With respect to Williams's § 1983 claims based on the ADA, defendants argue that Title II of the ADA does not provide for a cause of action against government officials sued in their individual capacities. Williams contends that defendants have forfeited this argument because it was allegedly not raised before the district court. Williams's contention is without merit.

In their reply brief in support of their motion for summary judgment, filed on September 30, 2005, defendants argued that "the law is unclear whether Plaintiff can even sue prison officials in their individual capacities for damages. In *Miller v. King*, the Eleventh Circuit held that liability under § 12132 of the ADA 'extends only to public entities and not to persons in their individual capacities.'"[4] At the October 17, 2005, hearing on defendants' motion for summary judgment, defendants' counsel argued with respect to Williams's ADA claim that "at the very most it's up in the air whether this officer could be [liable] under that Act at all, and for other reasons stated." Defendants raised this argument before the district court, and it may properly be considered by this court.

We also agree with defendants that the ADA does not provide for personal liability for defendants sued in their individual capacities. Title II of the ADA prohibits a public entity from discriminating against disabled individuals and states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "public entity" is defined, in relevant part, as "any State or local government." *See* 42 U.S.C. § 12131(1)(A). "Under Title II of the ADA, which forbids discrimination by 'any public entity', 42 U.S.C. § 12131, the proper defendant is that 'entity.'"

---

[4]In their September 30, 2005, reply brief, defendants noted that the Supreme Court granted certiorari in *Miller*. The Court issued its decision on January 10, 2006, and held that Title II of the ADA validly abrogates state sovereign immunity for conduct that actually violated the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151 (2006). The Court did not address whether Title II of the ADA provides for a cause of action against defendants sued in their individual capacities.

*Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000). We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-05 n.6 (6th Cir. 1997); *see also Walker*, 213 F.3d at 346 ("The director and all of the other defendants must have been sued in their official capacities – that is, as proxies for the state – rather than their individual capacities, because the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations.") (internal citations omitted).

Here, Williams's original complaint, filed September 18, 1998, declared that "All The [sic] defendants named in this complaint is [sic] sued in both individual and official capacity on plaintiff [sic] claims for damages and claims for a declaratory relief." On November 30, 1998, Williams sought leave to file a second amended complaint, "to correct prior added names of defendants and [to] add four defendants . . . ." The district court granted Williams's motion on January 7, 1999. Williams's amended complaint specifies that each of the defendants are sued in their individual capacities. Because each defendant has been sued in his individual capacity, the district court erred in denying defendants' motion for summary judgment with respect to Williams's ADA claims. We reverse the district court's October 28, 2005, order with regard to Williams's ADA claims against defendants.

## VI.

Defendants next argue that they are entitled to qualified immunity from Williams's Eighth Amendment claims. Qualified immunity is an affirmative defense that "shields 'government

officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). In order to withstand a motion for summary judgment based on the defense of qualified immunity, Williams must first show that defendants violated a constitutionally protected right. *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996). If so, Williams must then show that the right was clearly established. *Id.* The Supreme Court has emphasized that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. Thus, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).

Williams claims that by returning him to JMF, defendants failed to protect him from his attackers, thereby depriving him of his Eighth Amendment rights. In order to establish liability under the Eighth Amendment for a prison official's failure to protect him, Williams must demonstrate that defendants were deliberately indifferent "to a substantial risk of serious harm" to him. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). "To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregarded that risk

- 14 -

by failing to take reasonable measures to abate it.'" *Bowles*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847); *see also Hester v. Morgan*, 52 F. App'x 220, 222-23 (6th Cir. 2002) (unpublished) ("Deliberate indifference is a state of mind more blameworthy than negligence, but it entails 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" (quoting *Farmer*, 511 U.S. at 835)). Moreover, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 830 (noting that a "prison official's duty under the Eighth Amendment is to ensure 'reasonable safety'" (citation omitted )).

Defendants do not contest the objective component of Williams's Eighth Amendment claim. In the abstract, one prison inmate's threat to the health and safety of another inmate is "sufficiently serious" to satisfy this requirement. *See Farmer*, 511 U.S. at 833 (noting that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners") (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)); *see also Clark-Murphy v. Foreback*, 439 F.3d 280, 286-87 (6th Cir. 2006) (viewing objective component of deliberate indifference standard "[i]n the abstract"). Further, the allegations here contrast with other cases in which we have found that an inmate plaintiff failed to show that the defendant prison officials were indifferent to a specific, known risk to the inmate's safety. *See Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001) (unpublished) (noting that plaintiff "expressed a general concern" about his safety but did not "identify any particular gang members whom he feared").

Defendants instead argue that Williams has failed to show that they were subjectively aware of Williams's alleged threat of harm. We therefore assume that the objective component of the deliberate indifference standard has been met and focus our attention with respect to each defendant to determine whether Williams has alleged facts that could support a holding that the defendant unreasonably disregarded knowledge of the alleged risk of harm.

## A. Harold Warr

Accepting the facts as pleaded by Williams, we hold that Williams has not alleged facts sufficient to support the legal conclusion that defendant Harold Warr acted with deliberate indifference to Williams's Eighth Amendment rights. Warr was one of two prison guards who attempted unsuccessfully to handcuff and transfer Williams to a scheduled meeting with the SCC on January 15, 1998. Even assuming that Warr subjectively knew of the risk to Williams, nothing in the pleadings or the record suggests that Warr had any role or responsibility in the decision to return Williams to JMF. Thus, Williams has not set forth pleadings that Warr disregarded the risk to Williams by failing to take reasonable measures to guard against it. We therefore reverse the district court's denial of summary judgment on Williams's Eighth Amendment claim with respect to defendant Harold Warr.

## B. Harold White

Accepting the facts as pleaded by Williams, we hold that Williams has not alleged facts sufficient to support the legal conclusion that defendant Harold White acted unreasonably in the face of a known risk to Williams's health. White's relationship to Williams's treatment is tenuous. White was the second respondent to Williams's appeal from his first grievance (stemming from his

refusal to be cuffed in standard handcuffs).  In his response to Williams's grievance appeal, White recounted Williams's request for protection from the JMF facility and stated that Williams "refused to come out of [his] cell and Deputy Anderson concluded that [Williams's] refusal of interview indicated that [Williams] did not wish to proceed with the process and should be returned to JMF." Williams alleges that White "negat[ed] the true facts which involved [Williams] not being able to attend the Jan[uary] 15, 1998, S.C.C. interview" and "did not remedy Defendant Anderson's failure to afford Plaintiff protective custody, given the process was discriminatory in nature, by how his disability was used to preclude him from the S.C.C. interview, and instead, Defendant White upheld the violations."

Although Williams has alleged that White had subjective knowledge of Williams's alleged threats, he has not set forth pleadings that could support the legal conclusion that White acted unreasonably in disregarding the risk.  White's responsibility was to respond to Williams's grievance; White determined that Officers Warr and Doe acted in a manner consistent with departmental policy in refusing to provide alternative handcuffs, noting that without "medical detail" the guards "would be subject to disciplinary proceedings for breaching security."  Williams has not alleged that White had any authority to, or played any role in the decision to, order Williams's return to JMF.  Williams cannot show that White's actions or omissions within his limited role violated clearly established constitutional law.  We therefore reverse the district court's denial of summary judgment with respect to Harold White.

### C.  William Bailey

Defendant William Bailey, like White, has a tenuous relationship to Williams's failure to protect claim. Bailey reviewed the first step response to Williams's second filed grievance (stemming from a note that Williams gave prison officials in which he threatened to "get" his enemies at JMF, and for which he received a threatening behavior misconduct ticket), approving the grievance response, and indicating that Williams's grievance appeal was denied.[5] As with White, Bailey's actions as pleaded by Williams do not violate clearly established constitutional law. Williams did not allege that Bailey had any authority to, or played any role in the decision to, order Williams's return to JMF. Thus, Williams cannot show that Bailey acted unreasonably or disregarded the risk to Williams's safety. We likewise reverse the district court's denial of summary judgment with respect to William Bailey.

### D. Barry McLemore

Williams's Eighth Amendment claim is strongest with respect to defendant Barry McLemore. At the time of Williams's allegations, McLemore served as the Warden at SMI. Williams has set forth allegations that suggest McLemore had subjective knowledge of the alleged danger that Williams faced at JMF. In his third step grievance response, Director McGinnis noted that Williams was in administrative segregation due to his request for protection and stated that McGinnis would be forwarding his grievance response to McLemore. Moreover, McLemore served as the second respondent to Williams's second grievance appeal. In his grievance appeal, which McLemore reviewed, Williams explained that he had enemies at JMF and that he feared for his life. A

---

[5]According to Williams's amended complaint, Bailey "reviewed the first step grievance response, and he found it proper and in compliance with policy and [Williams's] rights."

reasonable factfinder could therefore conclude that McLemore had knowledge of the risk that Williams faced at JMF. *See Ewolski v. City of Brunswick*, 287 F.3d 492, 513 n.7 (6th Cir. 2002) (noting that "an official's subjective awareness of a risk may be proved circumstantially by evidence suggesting that the defendant . . . had been exposed to information concerning the risk and thus must have known about it.") (internal citation and quotation marks omitted); *see also Farmer*, 511 U.S. at 843 n.8 (noting that a prison official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist").

In contrast to defendants Warr, White, and Bailey, Williams has also alleged facts sufficient to support a finding that McLemore acted unreasonably in returning Williams to JMF without conducting an SCC meeting. In his response to Williams's first grievance, Director McGinnis found that there were several errors with the denial of Williams's SCC hearing, concluding that "it appears based on the step one response, the grievant has a physical impairment which calls for special cuffs to be used for handcuffing." Although Director McGinnis did not explicitly direct McLemore to conduct an SCC meeting with Williams, McGinnis forwarded the grievance to McLemore "to ensure that appropriate action is taken on this issue." This language, and McLemore's title, suggests that McLemore had the authority to conduct an SCC meeting in order to investigate and substantiate Williams's claims of danger at JMF.[6]

_____

[6]Because Director McGinnis forwarded his grievance response to McLemore with the implied instruction to conduct an SCC meeting, and McLemore failed to do so, this case is distinguished from our prior cases that have held that a prison official's denial of an administrative grievance cannot be the basis of liability. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (noting that plaintiff's only allegations against defendants was their "denial of his administrative

Nevertheless, despite Director McGinnis's grievance response and Williams's repeated claims of danger, Williams was sent back to JMF without a meeting. Given Williams's repeated expressed concerns for his safety and his continued willingness to subject himself to discipline in order to avoid a return to JMF, we conclude that a reasonable trier of fact could find that McLemore unreasonably disregarded the risk to Williams's safety by failing to conduct an SCC meeting and attempting to substantiate Williams's allegations of danger.

In order to avoid qualified immunity for McLemore, in addition to showing that McLemore violated Williams's constitutional right, Williams must also show that the right McLemore allegedly violated was clearly established. We conclude that it was. The Court made clear in *Farmer* that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners," *Farmer*, 511 U.S. at 833, and that an official may be held liable if he knows of and disregards an excessive risk to an inmate's health or safety, *id.* at 837. Thus, in August of 1998, four years after *Farmer* was issued, McLemore would have had reason to know that he acted unlawfully in disregarding the risk to Williams's safety; qualified immunity is thus not available to McLemore.

Finally, defendants also argue that they are entitled to summary judgment because Williams has not shown that he was attacked by either of the two enemies that Williams identified in his February 1998 note. We disagree. In *Farmer*, the Court stated that a defendant prison official may not:

> escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed

grievances").

- 20 -

the assault. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health," *Helling* [*v. McKinley*], 509 U.S. [25] at 35 [(1993)], and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

*Farmer*, 511 U.S. at 843. Following *Farmer*, we have upheld prisoner Eighth Amendment claims based on allegations that prison officials disregarded a risk of future assault to the inmate based on the inmate's characteristics. *See, e.g., Greene*, 361 F.3d at 295; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 84 (6th Cir. 1995). In these cases, it was not fatal to the inmate-plaintiff's claim that they were unable to identify their actual assailant before the prison official's disregard of their safety; nothing in *Farmer* suggests that Williams's claim must fail because he cannot identify the person who stabbed him.

VII.

For the reasons provided above, we reverse the district court's denial of summary judgment with respect to Williams's § 1983 claims based on the ADA against defendants. We affirm the district court's denial of summary judgment with respect to Williams's Eighth Amendment claim against defendant Barry McLemore, but reverse the district court's denial of summary judgment with respect to Williams's Eighth Amendment claims against defendants Harold Warr, Harold White, and William Bailey.