**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0126n.06

**No. 09-6298**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 24, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MARK C. ARFLACK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF HENDERSON, KENTUCKY; | ) | |
| RON HERRINGTON, Jailer; FREDDIE | ) | ON APPEAL FROM THE UNITED |
| ROWLAND, Chief Deputy; ADAM | ) | STATES DISTRICT COURT FOR THE |
| OVERFIELD, Major; CHRISTY | ) | WESTERN DISTRICT OF KENTUCKY |
| MCDANIEL, Officer; TIFFANY VAUGHT, | ) | |
| Officer; WILLIAM BAKER, Officer; JOHN | ) | |
| GREENWELL, Officer; KRYSTAL | ) | |
| SOUDERS; JEFFERY REASONS, President, | ) | |
| In Their Individual and Official Capacity, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: GILMAN, GIBBONS, and COOK, Circuit Judges.

COOK, Circuit Judge. Pro se prisoner Mark Arflack appeals the district court's grant of summary judgment to the defendants in his § 1983 case. We affirm.

I.

The events giving rise to this action originate from Arflack's pretrial detention at the Henderson County Detention Center (HCDC). Soon after Arflack's arrival at HCDC in late 2006,

he received threats of physical violence from his cellmate, Kenny Holland. Arflack states that he

reported these threats to HCDC employees verbally and requested that they move him to a different

cell, but to no avail. Then, in December 2006, he filled out a requisition form, citing the threats and

again asking to change cells. HCDC denied the request. Arflack claims that in early January 2007

he filed an identical report, to which Defendants failed to respond.[1]

In mid-January, Holland severely beat Arflack, fracturing his skull and orbital bones.

Holland and a fellow inmate then left Arflack unconscious in his bunk. When Arflack regained

consciousness several hours later, he sought the attention of HCDC medical personnel.[2] By that

time, his condition had so deteriorated that medics had to airlift him to the hospital to undergo

emergency surgery for his injuries. Approximately a week later, hospital staff released Arflack and

returned him to HCDC, where, as the evidentiary record demonstrates, he received medication and

check-ups from outside physicians and prison personnel for several weeks.

At the end of 2007, Arflack filed a § 1983 suit, alleging that HCDC guards failed to protect

him from Holland's attack, and that HCDC and SHP staff denied him proper medical care after the

assault. Arflack also argued that HCDC personnel violated his right of access to the courts by failing

---

[1]In mid-February, Arflack filed a grievance concerning HCDC's purported loss of this January requisition form. Defendants answered the grievance, stating that they had "[n]o record of [Arflack] turning in any forms in January."

[2]HCDC contracts all its medical services to Southern Health Partners (SHP). The parties do not dispute that, for the purposes of § 1983 liability, SHP is a "state actor." *See, e.g.*, *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351–52 (6th Cir. 2001).

No. 09-6298
*Arflack v. Cnty. of Henderson*

to make copies of motions for his pending state-court cases. The district court granted summary

judgment to the defendants. It held that Arflack did not exhaust administrative remedies prior to

filing the failure-to-protect claim, Arflack's medical records demonstrated that he received adequate

treatment following his assault, and Arflack suffered no actual injury as a result of HCDC's failure

to copy his motions. *Arflack v. Cnty. of Henderson*, No. 4:07CV-P144-M, 2009 WL 3210604 (W.D.

Ky. Sept. 30, 2009). Arflack now appeals each of these holdings.[3]

II.

We review de novo a district court's grant of summary judgment. *Ciminillo v. Streicher*, 434

F.3d 461, 464 (6th Cir. 2006). "Summary judgment is proper if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007)

---

[3]In his appellate brief, Arflack also claims that SHP staff withheld his HIV medications for seven days. Though Arflack did mention this claim in the motion for summary judgment he filed over a year after commencing suit, it appeared in neither his original or amended complaint, and the district court rightly disregarded it. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006) ("The appropriate method for adding new factual allegations to a complaint is . . . by filing an amended complaint.). In the interest of holding this pro se complaint to less stringent standards than formal pleadings drafted by lawyers, *see Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003), we briefly address the argument. For § 1983 cases, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (alteration in original) (internal quotation marks and citation omitted). Arflack's claim, which lacks this requisite evidence, must fail.

(internal quotation marks omitted) (citing Fed. R. Civ. P. 56(c)). "The evidence must be viewed in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Id*. "The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the [non-moving party]." *Weigel v. Baptist Hosp. of E. Tenn*., 302 F.3d 367, 375 (6th Cir. 2002). Additionally, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A.

First, Arflack alleges that the "[d]efendants were [d]eliberate[ly] [i]ndifferen[t] to [a] substantial risk of serious harm" in failing to protect him from his cellmate. In its defense, HCDC states that Arflack failed to exhaust the center's internal procedures before bringing this suit. Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

HCDC has a clearly documented grievance procedure. Per its terms, "[a]ny inmate shall be allowed to file a grievance at such time as the inmate believes he or she has been subject to abuse, harassment, abridgement of civil rights, or denied privileges specified in the posted rules." Once an inmate submits a grievance, the jailer reviews, investigates, and responds to the claim. If the inmate remains dissatisfied with the jailer's resolution of the claim, HCDC provides the inmate with writing materials so that he may appeal to the county judge or executive.

Both parties concede that Arflack never grieved HCDC staff's failure to protect him from the attack *after* it occurred. In the post-assault grievance Arflack did file, he complained only that HCDC never answered one of his prior request forms; he did not mention the attack. In no instance did Arflack appeal a grievance in writing, as HCDC's procedures require.[4] Because HCDC demonstrates that Arflack failed to exhaust his administrative remedies prior to initiating litigation, the PLRA mandates that we deny his claim.

---

[4]In his brief, Arflack argues that because his case involves an assault rather than "circumstances affecting everyone," he need not exhaust HCDC's grievance procedures, and that he nonetheless "made every available attempt to exhaust his remedies." *Porter* unequivocally contradicts Arflack's first contention. *See* 534 U.S. at 532; *see also Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999) (applying the PLRA's exhaustion requirement to a § 1983 claim where inmate alleged that prison guards failed to protect him from sexual assault by his cellmate). Moreover, Arflack's persistent filing of grievance forms demonstrates that he could comply with HCDC's grievance procedure, but neglected to do so in this instance.

B.

Next, Arflack claims that HCDC and SHP staff inflicted cruel and unusual punishment "by not making certain the bones in his face and around the eyes were repaired."[5] To prevail on his claim, Arflack must show that officials demonstrated "deliberate indifference" to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[D]eliberate indifference is a stringent standard of fault . . . ." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) (alteration in original) (internal quotation marks and citation omitted). To survive a motion for summary judgment, the plaintiff must allege facts that, if true, show that the prison officials (1) subjectively perceived facts from which to infer substantial risk to the prisoner, (2) did in fact draw the inference, and (3) then disregarded that risk. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Although "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference," *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843–44 (6th Cir. 2002) (internal quotation marks and citation omitted), "[t]he fact that alternative procedures might have better addressed [a prisoner's] particular needs does not show that the [County was] deliberately indifferent to his medical needs," *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (alterations in original) (internal quotation marks and citation omitted). "Where a prisoner has received some medical attention and the dispute is over the

[5]Arflack repeatedly suggests that his "broken bones around both eyes" (i.e., the orbital bones) were not repaired. The hospital's surgical records, which explicitly state that Arflack underwent "operative procedures" for "his orbital repair," belie this assertion.

adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Arflack's allegations fail to show that HCDC and SHP officials demonstrated deliberate indifference to his serious medical needs. Defendants, in their motions for summary judgment, provide ample records of Arflack's treatment, including nurse's notes, hospital reports, and correspondence with doctors. Arflack's own complaint includes additional evidence of such treatment, such as a visit to an orthopaedic and neurosurgical clinic. Together, these documents establish that medical personnel, both inside and outside of the prison, treated and examined Arflack several times. Far from "cursory," Arflack's treatment was extensive and effective. In a follow-up visit, a treating optometrist observed that Arflack had "no damage to the eyes," and expressed optimism "that there will be no, or at least insignificant, vision damage."[6] The evidentiary record,

---

[6]In his response to defendants' motion for summary judgment, Arflack argues that defendants "forged and falsified" his medical records. As supporting evidence, Arflack produces a patient referral form showing that SHP personnel canceled one of his scheduled follow-up appointments. This occurrence, however, proves little in light of the rest of the evidentiary record, which reveals multiple fulfilled doctor's appointments. *See, e.g.*, *Dotson v. Phillips*, 385 F. App'x 468 (6th Cir. 2010) (affirming summary judgment to defendant prison personnel because, where the evidentiary record demonstrated that defendants provided care "at every stage" of the prisoner's injury, cancellation of a follow-up appointment did not rise to deliberate indifference); *Birrell v. Michigan*, No. 94-2456, 1995 WL 355662 (6th Cir. June 13, 1995) (affirming summary judgment to defendant prison personnel where exhibits and affidavits demonstrated plaintiff received adequate medical care, despite his allegations that defendants conspired to cover up their wrongdoing); *Patterson v. Epp*, No. 85-1512, 1985 WL 13864 (6th Cir. Oct. 15, 1985) (affirming summary judgment to defendant prison medical director because cancellation of plaintiff's follow-up appointment with a specialist did not constitute deliberate indifference to plaintiff's serious medical needs).

in its totality, demonstrates that HCDC and SHP personnel were not deliberately indifferent to Arflack's medical needs. *See, e.g.*, *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002) (affirming grant of summary judgment to defendant prison officials where prisoner's medical records showed that prisoner received follow-up care and medication, as such a claim "amounts to a difference of opinion between [the prisoner] and the prison health care providers and a dispute over the adequacy of his treatment").

C.

Finally, Arflack argues that HCDC wrongfully denied his access to the courts by failing to make copies of motions for his then-pending state-court cases. Although inmates have a constitutionally protected right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the right is not unrestricted and does not require that prisons afford their inmates unlimited litigation resources, *Lewis v. Casey*, 518 U.S. 343, 354–55 (1996). "In order to state a claim for interference with access to the courts, . . . a plaintiff must show actual injury." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Id*.

According to Arflack, at the time of his relocation to HCDC "[he] was working on [a]ppealing his Henderson charges (01-CR-00122 and 02-CR-00053) under the 'Speedy Trial Act.'" Arflack produced a requisition form he used to order copies of a "hand written [m]otion to the

[c]ourt" pursuant to "[a] deadline date [four days later]." HCDC, he claims, returned the form five days after the filing deadline, and never made the requested copies, leaving him "unable to file the entire appeal," with "his chances . . . forever lost."

Despite Arflack's claims, HCDC's purported inaction did not prejudice Arflack's appeals, as the Kentucky courts had already granted his speedy-trial petitions. As the district court explained,

> The Court takes judicial notice that on September 12, 2006, the Kentucky Court of Appeals denied Arflack's petition for writ of mandamus on the speedy trial issue as moot due to the fact that the Henderson Circuit Court granted Arflack's motion for a speedy trial in actions 01-CR-00122 and 02-CR-00053 and ordered the real party in interest to bring Arflack to trial within 180 days from 7/18/2006. *See Arflack v. Hayden*, No.2006-CA-1437-OA, Sept. 12, 2006 Order. Furthermore, the Court takes judicial notice that Arflack attempted to file a direct appeal to the Kentucky Court of Appeals on the speedy trial issue that was dismissed as premature on October 19, 2006. *See Arflack v. State of Kentucky*, No.2006-CA-001574, Oct. 10, 2006 Order.

*Arflack*, 2009 WL 3210604, at *9. The Kentucky Court of Appeals's record establishes that Arflack was able to raise his speedy-trial issue before the court and that the issue was not dismissed on a procedural error. Arflack thus fails to establish that HCDC's alleged delay in processing his copy request prejudiced his access to the courts. *See Lewis*, 518 U.S. at 351 ("[T]he inmate . . . must . . . demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.").

### III.

We accordingly affirm the district court's judgment.

No. 09-6298
*Arflack v. Cnty. of Henderson*

**RONALD LEE GILMAN, Circuit Judge**, concurring. I fully agree with the analysis and result reached by the lead opinion. My purpose in writing separately is to point out what appears, based on Arflack's allegations, to be an abdication of duty by the HCDC prison officials to protect Arflack from harm at the hands of another prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[P]rison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners" (alterations and internal quotation marks omitted)); *see also id.* at 834 (listing a case from every regional circuit holding similarly, including *Roland v. Johnson*, 856 F.2d 764, 769 (6th Cir. 1988)).

Before a prisoner can succeed against prison officials on an Eighth Amendment duty-to-protect claim under 42 U.S.C. § 1983, two requirements must be met: (1) the "deprivation alleged must be, objectively, sufficiently serious," and (2) "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotation marks omitted). The Supreme Court has not defined what would constitute a sufficiently serious deprivation in this context. But a "threat to the health and safety of another inmate is 'sufficiently serious' to satisfy" the objective component of this analysis. *Williams v. McLemore*, 247 F. App'x 1, 9–10 (6th Cir. 2007) (assuming that the objective component of the deliberate indifference standard was satisfied where there was evidence that one inmate threatened another).

To succeed against the prison officials, Arflack would also need to show that they acted with "deliberate indifference" to a substantial risk that Arflack would suffer serious harm at the hands of

- 10 -

his cellmate Kenny Holland. "A sufficiently culpable state of mind is one in which the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (internal quotation marks omitted). "A prison official can be liable if he disregards that risk by failing to take reasonable measures to abate it." *Id.* (quoting *Farmer*, 511 U.S. at 847).

Assuming that the facts as alleged by Arflack are true, as we must assume at the summary-judgment stage of the case, the allegations are sufficient to establish that (1) Holland presented a serious threat to Arflack's safety, and (2) the prison officials disregarded Arflack's repeated requests to be separated from his dangerous cellmate. In spite of these allegations, however, I find no basis in the record to disagree with the lead opinion that Arflack has failed to exhaust his administrative remedies and is therefore unable to pursue his failure-to-protect claim through the courts until he does so. But the HCDC officials should recognize that their success on this claim is based solely on procedural grounds. Hopefully in the future these officials will investigate and act upon credible threats of serious harm to prevent another horrific attack. *See Farmer*, 511 U.S. at 833 ("Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective." (citation and internal quotation marks omitted)).